**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| SHEENA AMBLE, | CASE NO. 3:22-CV-50196 |
| PLAINTIFF, | |
| V. | HONORABLE IAIN D. JOHNSTON |
| CITY OF ROCKFORD FIRE DEPARTMENT, | |
| DEFENDANT. | |

**MEMORANDUM OPINION AND ORDER**

Sheena Amble has brought this action against her former employer—the City of Rockford Fire Department (RFD)—alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Specifically, Amble alleges that RFD engaged in gender discrimination, fostered a hostile work environment constituting sexual harassment, and committed unlawful workplace retaliation. RFD has moved for summary judgment [63].[1] For the following reasons, the motion is granted in part and denied in part. Counts I and III are dismissed.

## I. Undisputed Factual Background

Amble was hired by RFD on March 29, 2004. Defendant's Statement of Material Facts (DSMF) [65] at ¶ 4. Other than a short stint of employment with the Madison, Wisconsin Fire Department in 2006-2007, Amble remained employed by

---

[1] The parties spent nearly 10 months briefing summary judgment. A trial—rather than what's occurred here—would have furthered the goals of Rule 1. In the future, counsel will not be allowed to dawdle through summary judgment briefing.

RFD until her resignation in May 2019. *Id.* at ¶¶ 6-7, 52. During Amble's time with RFD, Derek Bergsten was the Chief of the Department from November 2008 onward. *Id.* at ¶¶ 9-10. Amble takes issue with two distinct decisions at RFD as well as its ongoing culture from January 2019 onward. Each will be addressed in kind.

### i. Denied Station Transfer

In November 2011, Amble requested a station transfer from her duty station of Fire Station #9 to either Fire Station #4 or #10. *Id.* at ¶ 8. She was pregnant at the time of the request and Amble hoped the transfer would take effect upon her return from maternity leave in May 2012. *Id.* at ¶ 15. Amble reported to Bergsten that Fire Station #9 was inadequate for pumping breastmilk because it was without a designated female private restroom. *Id.* at ¶ 16. Bergsten denied the transfer request, stating that a private bathroom would be insufficient to satisfy the Illinois Nursing Mothers in the Workplace Act. *Id.* at ¶ 19. Bergsten instead determined that a lock could be placed on the bedroom door in Fire Station #9 to accommodate Amble's need to pump privately. *Id.* at ¶¶ 18-20. This lock was placed on the door, but Amble felt this solution was insufficient. Amble's Response to DSMF [75] at ¶¶ 18-20; Amble dep. at 37:3-37:11. But, she apparently took no further action at that time.[2]

### ii. Discontinued Girls Fire Camp

In late 2016, Amble emailed Bergsten to inquire about RFD hosting a "Girls Fire Camp" for young women interested in the fire services profession. DSMF at ¶

---

[2] The record doesn't indicate that there was any resolution to this issue outside of Bergsten placing the lock on the dormitory door, nor does it indicate that Amble took any further action related to this concern between November 2011 and the filing of this complaint in June 2022.

21. This event was successfully held in both July 2017 and July 2018. *Id.* at ¶¶ 22-23. In preparing for a 2019 Girls Fire Camp, new restrictions on the budget and participation were imposed by RFD leadership. *Id.* at ¶¶ 27-29. Amble supported some of the changes but inquired with Bergsten about possibly expanding the camp and bringing in neighboring departments to assist with costs. *Id.* at ¶¶ 31-32. After these talks were unsuccessful, Amble informed Bergsten in January 2019 that she would be pursuing external avenues of support and funding for the camp. *Id.* at ¶ 35.

### iii. Culture & Alleged Harassment at RFD

Notwithstanding the denied station transfer in 2011, Amble was transferred to Fire Station #4 in January 2019. Complaint [1] at ¶ 10; Answer [8] at ¶ 10. While at Fire Station #4, Amble was present or subject to at least one conversation of a sexual nature, including two male firefighters crudely conversing in Amble's presence, questioning how vegans would "suck dick," with one of them also stating that he would "suck your dick so good." DSMF at ¶ 37; Amble dep. at 25:16-26:10. Next, Amble found pornographic magazines in the restroom of another station. DSMF at ¶ 42. And Amble reported finding play money photoshopped with her image on it— apparently dubbed "Sheena Bucks"—on two separate occasions. *Id.* at ¶ 43. Amble was the only female assigned to Fire Station #4. Plaintiff's Statement of Material Facts (PSMF) [74] at ¶ 34.

Amble complained to Captain Willie Brown and Human Resources Director Shaurice Hunter about this conduct and an investigation was conducted. PSMF at ¶¶ 1, 6. This wasn't a formal disciplinary investigation, but rather an "informal fact-

3

finding process." *Id.* at ¶ 5. Hunter found violations of rules and regulations but recommended only additional training be provided in sexual harassment, diversity, and business etiquette and professionalism.[3] *Id.* at ¶¶ 6-7, 28-29, 31. Brown held meetings to try to resolve the conflict, but after these were unsuccessful, Amble insisted on escalating the issues. *Id.* at ¶¶ 20-21. Bergsten didn't learn of the allegations until April 2019. DSMF at ¶ 47; Amble Letter to Bergsten [65-3]. On April 5, 2019, Amble was transferred stations again, this time to Fire Station #2. PSMF at ¶ 22.

By April 2019, Amble had contacted Chief Joe Corl of the Cherry Valley Fire Department (CVFD) about hosting a Northern Illinois Girls Fire Camp. *Id.* at ¶ 48. Corl expressed interest but reported a desire to confirm Bergsten's support for a regional camp before committing. *Id.* In response, Bergsten told Amble that he would discuss the plan for a regional Girls Fire Camp after the "current situation" was resolved.[4] *Id.* at ¶ 49. But on May 9, 2019, Amble resigned, citing the alleged ongoing harassment and ineffective remedial action. *Id.* at ¶ 10.

---

[3] RFD clarifies that Hunter was unable to recommend more than mere training, as she lacked oversight of RFD personnel. RFD's Response to PSMF [85] at ¶ 28. Moreover, Captain Brown is a member of the Fire Union and therefore also unable to discipline sworn personnel. *Id.* at ¶ 40.

[4] The parties agree that Bergsten said this but talk past each other in disputing what "current situation" he was referring to. DSMF at ¶ 49; Amble's Response to DSMF [75] at ¶ 49. Amble contends that the only situation he could be referring to was regarding her allegations of workplace harassment. PSMF at ¶ 26; Amble dep. [65-1] at 41:15-42:3. RFD responds that the ongoing situation wasn't Amble's allegations of harassment, but rather more broadly "addressing [Amble's] concerns with Fire Station #4." RFD's Response to PSMF at ¶ 26; Bergsten Affidavit [65-2] at ¶ 30. This seems to be a distinction without a difference. Amble's concerns with Fire Station #4 *included* that she was allegedly being harassed at Fire Station #4.

4

## II.    Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if a reasonable jury could return a verdict for the nonmovant, construing the evidence and all reasonable inferences in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). The Court need not draw every conceivable inference in favor of the nonmovant, only reasonable ones. *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 905 (7th Cir. 2005).

## III.    Analysis

Title VII prohibits employers from discriminating against employees based on sex, among other protected characteristics. *Ames v. Oh. Dep't of Youth Servs.*, 605 U.S. 303, 305 (2025). Generally, a Title VII plaintiff must "carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under" Title VII. *Koehler v. Infosys Techs. Ltd., Inc.*, 628 F.Supp.3d 835, 847 (E.D. Wis. 2022) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 (1977)). A plaintiff may establish a violation of Title VII in several ways including showing an employer's intentional discrimination or practice or policy resulting in discrimination (termed "gender discrimination" by plaintiff here); proving that discrimination has created a hostile or abusive work environment; or demonstrating that her employer took retaliatory action against her

5

for engaging in a protected activity. *Teamsters*, 431 U.S. at 360; *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66-67 (1986); *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 889 (7th Cir. 2004).

### i.    *Gender Discrimination*

A Title VII gender discrimination claim may be proven either through demonstration of intentional discrimination (also referred to as disparate treatment) or, in some cases, through demonstration of a policy or practice that—although not intended to discriminate—nevertheless has a disproportionate adverse impact on a protected class of individuals (also referred to as disparate impact). *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Amble alleges both. Complaint at ¶¶ 45-47. A distinct but related manner of proving a gender discrimination claim is through demonstrating the existence of a hostile work environment. Rather than demonstrating a job-related action as the basis for a discriminatory action, Amble must demonstrate that: (1) she was subject to unwelcome harassment; (2) the harassment was based on her sex; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability. *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 813 (7th Cir. 2022) (quoting *Erickson v. Wis. Dep't of Corr.*, 469 F.3d 600, 606 (7th Cir. 2006)).

To establish intentional discrimination, Amble is required to prove that RFD had a discriminatory intent or motive for a job-related action. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986 (1988); *Ernst v. City of Chicago*, 837 F.3d 788, 794

(7th Cir. 2016). To do so, she may prove discrimination either directly—with direct or circumstantial evidence—or indirectly—by identifying similarly situated employees outside of her protected class who were treated more favorably. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). But under a Title VII—as opposed to a Section 1983—hostile work environment case, no specific discriminatory intent need be directed at Amble; instead, she need only be a member of the protected class. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014); *Huff v. Sheahan*, 493 F.3d 893, 902-03 (7th Cir. 2007).

In her response, Amble constructively abandons any claim for either disparate treatment or disparate impact and puts her eggs into a single hostile workplace basket.[5] Because Count II is the claim that specifically alleges a hostile workplace, Count I is dismissed. For purposes of this case, perhaps it's helpful to remember that a hostile work environment claim is a subset of sexual harassment and sexual harassment is a subset of sex discrimination. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986);

---

[5] Amble doesn't do this explicitly. She claims that the alleged hostile work environment prevents summary judgment on both Counts I and II. But this doesn't work. When claims involve "the same operative facts and the same injury, and [] require proof of essentially the same elements," the Court has the authority to dismiss the duplicative claims. *Greene v. Ill. Sec'y of State*, 813 F. Supp. 3d 861, 872 (N.D. Ill. 2025) (quoting *Barrow v. Blouin*, 38 F. Supp. 3d 916, 920 (N.D. Ill. 2014). Count II in Amble's complaint is labeled "hostile work environment." Moreover, merely blending claims together into one confusing agglomeration for the Court and RFD to figure out—if not just guess—what claims Amble is attempting to bring is both bad practice and precisely what the pre-filing summary judgment conference is intended to avoid. Dkt. 56. Counsel is further reminded that separate counts are only required when they are based on separate transactions or occurrences. Fed. R. Civ. P. 10(b). No separate transaction or occurrence has been plead, so separate counts are not required, and pleading separate counts certainly did not promote clarity. *Id.*

*Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991); *Piech v. Arthur Andersen &Co., S.C.*, 841 F. Supp. 825, 828 (N.D. Ill. 1994).

### ii. Hostile Work Environment

Although the parties agree that Amble was subjected to some harassment and has satisfied the first element of a Title VII case for a hostile work environment, the parties dispute whether the harassment was based on her sex, whether the harassment was "severe or pervasive so as to alter the conditions of the employee's work environment," and whether there is a basis for employer liability. The Court takes each in turn.

*Basis for Harassment*

In a single paragraph, RFD claims that the harassment suffered by Amble was not sexual harassment, in that it was not "based on" her sex. RFD Memorandum [64] at 15. Amble responds by pointing toward the record indicating sexually inappropriate conversations in the workplace and the presence of pornography—specifically PlayBoy and PentHouse magazines—in a setting where she was the only female employee. Amble Response Brief [73] at 4-5.

Because every plaintiff alleging a hostile work environment possesses a protected characteristic of some sort, Amble must do more than merely speculate that any animus in the RFD workplace was tied to her sex. *Hall v. City of Chicago*, 713 F.3d 325, 333 (7th Cir. 2013). This is more difficult when a plaintiff is the only member of her protected class in a workplace, leaving a lack of adequate comparison. *Id.* Looking specifically to the conduct occurring at RFD though, a reasonable jury

could find that the harassment was related to Amble's sex sufficient to constitute sexual harassment.

Within a few months, pornographic magazines depicting nude females were left in a restroom, at least one crude conversation regarding oral sex occurred in Amble's presence, and play money depicting Amble's image was left on at least two occasions on a fire station bulletin board.[6] This is sufficiently related to Amble's sex to survive summary judgment.

*"Severe or Pervasive"*

Next, the Court turns to whether the workplace conduct was so "severe or pervasive as to alter the conditions of the employee's work environment." A reasonable jury could say that it was.

Courts consider the totality of the circumstances when determining whether conduct is severe or pervasive. *Scaife v. U.S. Dep't of Veteran Affairs*, 49 F.4th 1109, 1116 (7th Cir. 2022). This includes (1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it is directed at the victim. *Id.* (citing *Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863,

---

[6] As to this last point, a disputed fact remains *why* another RFD employee made and published this image. Amble uses it as evidence of further sexual harassment, describing it as a "humiliating display[]… contribut[ing] to a hostile environment." Amble Response Brief [73] at 4. RFD argues that the money was actually posted in response to Amble's reputation for paying other RFD employees to take shifts for her. DSMF at ¶¶ 54-56. To the extent RFD uses an unproduced document detailing time trades that was sprung on Amble mid-deposition, Amble's objection is sustained for the purpose of summary judgment. In any event, there being an imbalance in time trades doesn't foreclose the possibility that the play money still constituted sexual harassment. That's a question for a jury.

868 (7th Cir. 2013)). No one factor is required or dispositive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Amble's case is weak. But taking the facts in the light most favorable to Amble and drawing all reasonable inferences in her favor, a reasonable jury could find the conduct occurring to Amble at RFD was severe or pervasive sufficient to interfere with her work environment. Summary judgment is binary—either there's sufficient evidence to go to a jury or there's not. It's a pass-fail test. So, even D-minus cases go to juries. *DR Distribs., LLC v. 21st Century Smoking, Inc.*, No. 12-cv-50324, 2024 U.S. Dist. LEXIS 99866, at *42 (N.D. Ill. June 5, 2024) ("[E]ven weak cases survive summary judgment and are allowed to go to trial.") (collecting cases).

To the extent Amble relies on her rejected transfer request from 2011 as a basis for a hostile work environment, this argument is rejected. It's too remote and too long ago for a reasonable jury to find it contributed to any workplace environment that led to her resignation in 2019. But looking at the first five months of 2019, Amble was at least subjected to a conversation about oral sex, found pornography in the restroom, and was subjected to multiple instances of "Sheena Bucks" being published in the fire station, despite her objections.[7]

The discriminatory conduct was pervasive over those five months. Despite her objections at the first instance of harassment (the conversation about oral sex), it persisted and wasn't a one-off instance of unwelcomed conduct. A reasonable person

---

[7] Further isolated allegations which are disputed including further demeaning and humiliating experiences also go toward an allegedly hostile environment and may also be presented to the jury. *See, e.g.,* DSMF at ¶¶ 40-41; Amble's Response to DSMF at ¶¶ 40-41.

10

might not be outright horrified by the conduct, but they might nonetheless be offended by it, particularly considering her repeated attempts to have the conduct stop. Though primarily verbal in nature, Amble's face being plastered on fake currency despite her objections could certainly be viewed as humiliating and sexual in nature. Amble has alleged physical and psychological symptoms due to the harassment, which—if believed by the trier of fact—could constitute unreasonable interference with her work performance. Some of the harassment could reasonably be viewed as directed at her, given she was the only female in the station where pornographic magazines were found in the restroom. Other acts were clearly directed at her, given it was her face alone on the "Sheena Bucks," which were placed in a location where she—and her coworkers—would see them.

It's true that "[o]ffhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment." *Passananti v. Cook County*, 689 F.3d 655, 667 (7th Cir. 2012). And were Amble to have alleged any one of these incidents in a vacuum, it likely couldn't be brought before a jury as a matter of law. That she has brought to light several incidents in a five-month window, all tied to her sex, is sufficient to advance at this stage.

*Employer Liability*

Finally, the Court examines whether there is a basis for employer liability on the part of RFD. Amble's allegations of harassment come by the hands of coworkers, not supervisors, and any vicarious liability on the part of RFD comes under a negligent working conditions standard. *Vance v. Ball State U.*, 570 U.S. 421, 446

(2013) ("an employer will always be liable when its negligence leads to the creation or continuation of a hostile work environment.").

Contrary to RFD's assertions, the undisputed record demonstrates that Amble made her superiors aware of the harassment each time it occurred. She complained to Captain Brown when the conversation about oral sex occurred, about the pornographic magazines, and about the presence of the photoshopped currency. Rather than escalating the concerns, however, Brown attempted to handle the matter himself. Not until Amble insisted the matter be taken "downtown" did more individuals become involved. And even at that point, after Chief Bergsten became aware of the allegations, he moved Amble—the alleged victim—and assigned the HR Director to investigate, despite the fact that—just like Brown—she lacked the authority to discipline fire personnel. A reasonable jury could view this procedure as negligent on the part of RFD toward both preventing workplace harassment and addressing harassment complaints.

To the extent RFD invokes an *Ellerth-Faragher* affirmative defense, this is not appropriate for summary judgment. Were RFD to exercise reasonable care to prevent and promptly correct any sexually harassing behavior *and* demonstrate that Amble unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer, it could be granted summary judgment. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998). But it's not made this showing. Indeed, the undisputed facts appear to show the opposite. Amble complained to her superior, Brown, but Brown—

12

a Unionized employee—was powerless to stop the harassment, and failed to escalate the concerns until it was too late. And even when an HR Director was asked to investigate, she was effectively equally powerless to stop the harassment, beyond recommending additional training, apparently called—at least in part—"business etiquette." RFD has failed to show that Amble knew or should have known some other, better procedure to prevent herself from being harassed. This doesn't demonstrate reasonable care on the part of RFD. For these reasons, the motion for summary judgment is denied on Count II.

### iii. *Retaliation*

Count III alleges that Amble was subjected to retaliation because of her complaints, in violation of Title VII. Complaint at ¶¶ 53-57. RFD has moved for summary judgment, arguing that she has failed to make a prima facie showing of retaliation. On this count, a reasonable jury couldn't find retaliation occurred as a matter of law. So, the motion for summary judgment on Count III is granted.

Title VII forbids an employer from discriminating against an employee who has "opposed any practice" made unlawful by Title VII. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). Amble may establish unlawful retaliation in one of two ways. Directly, she may demonstrate that (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) a causal connection exists between the two. *Id.* (citing *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008); *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404 (7th Cir. 2007)). Alternatively, she may establish retaliation indirectly, by demonstrating each

13

of the first two elements, as well as demonstrating that she was performing her job satisfactorily and was treated less favorably than a similarly situated employee who didn't complain of discrimination. *Id.* at 786-87 (citing *Argyropoulos*, 539 F.3d at 733). Amble hasn't presented any evidence related to similarly situated employees, so only direct retaliation will be evaluated.

No doubt, Amble engaged in statutorily protected activity. But RFD contends that Amble didn't suffer a materially adverse action, nor was any action causally related to her protected activity. Here, the Court agrees with RFD that Amble didn't suffer a materially adverse action.

For purposes of Title VII, an adverse employment action is defined as "a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Alamo v. Bliss*, 864 F.3d 541, 552 (quoting *Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000)). Such actions include: (1) diminishing an "employee's compensation, fringe benefits, or other financial terms of employment," including termination; (2) reducing long-term career prospects "by preventing [her] from using the skills in which [she] is trained and experienced, so that the skills are likely to atrophy and [her] career is likely to be stunted;" and (3) changing "the *conditions* in which [she] works … in a way that subjects [her] to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in [her] workplace environment." *Alamo*, 864 F.3d at 552 (quoting *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002)). Amble alleges three adverse employment actions RFD

14

implemented in retaliation for her complaints: (1) the forced station transfer, (2) the discontinuation of the Girls Fire Camp, and (3) Amble's alleged constructive discharge.

*Station Transfer*

Amble testified that immediately after meeting with Bergsten about her complaints, she was told not to return to Fire Station #4. This is insufficient as a matter of law to amount to a materially adverse employment action.

Amble has not alleged, nor does the record support, that her forced transfer upon the initiation of Bergsten's investigation meets the requirements set forth in *Alamo*. Being forced to move duty stations might be inconvenient. One's route to work, coworkers, and the idiosyncratic nature of long shifts changes. And perhaps Amble has some merit to a generalized grievance that it should not be her but instead the alleged perpetrators of the sexual harassment who are inconvenienced by an investigation.[8]

But without factual support to support her compensation or benefits having been affected, reduced long-term career prospects, or a change in the conditions of her employment that would *significantly* negatively impact her workplace conditions, Amble is unable to proceed to a jury on a retaliation claim for this transfer.

---

[8] The Court is not persuaded by RFD's contentions that station operations necessitated Amble's move instead of those alleged to have been harassing her. *See* DSMF at ¶¶ 61-67; Amble's Response to DSMF at ¶¶ 61-67. Moreover, Bergsten's self-serving affidavit can't create an undisputed fact. "[S]elf-serving statements in affidavits *without factual support in the record* carry no weight on summary judgment." *Mitchell v. Exxon Mobil Corp.*, 143 F.4th 800, 807-08 (7th Cir. 2025) (quoting *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004)). If Amble's station transfer *could* be found to be a materially adverse employment action as a matter of law, this would easily be a question for the jury.

15

*Girls Fire Camp*

Likewise, a reasonable jury couldn't find that the discontinuation of the Girls Fire Camp was in retaliation for her complaints. Plainly, the dates don't line up. The undisputed facts indicate that Bergsten first raised budgetary concerns with the event in September 2018, predating the bulk of the conduct alleged by Amble. *See Durkin v. City of Chicago*, 341 F.3d 606, 614-15 (7th Cir. 2003); *United States v. Williams*, No. 21-CR-50023, 2025 U.S. Dist. LEXIS 101932, at *5 ("Future events can't cause previous events; the space-time continuum doesn't work that way.").

To the extent Amble relies on allegedly harassing conduct occurring in the workplace before even September 2018, a reasonable jury couldn't make this connection. That Bergsten denied her station request in 2011—or that Bergsten had the budgetary and staffing concerns in the first place—couldn't lead a reasonable jury to the conclusion that there was retaliation or wrongdoing afoot. This was scheduled to be the third iteration of the camp. Each of the first two occurred without allegations of harassment or wrongdoing. Bergsten undisputedly noted a $12,000 expense related to the event. This is a legitimate and non-discriminatory concern for the Fire Chief of a municipality and it's not temporally or substantively connected to Amble's later complaints.

*Constructive Termination*

Finally, a reasonable jury couldn't find that Amble's resignation constituted a constructive discharge. Although a constructive discharge is certainly a materially

16

adverse change in the terms and conditions of employment, proving constructive discharge requires a plaintiff to clear a very high bar, which Amble can't do.

To constitute a constructive discharge, Amble must effectively demonstrate that she was *forced* to resign because her working conditions, from the standpoint of a reasonable employee, had become unbearable. *E.E.O.C. v. Univ. of Chi. Hospitals*, 276 F.3d 326, 331 (7th Cir. 2002). In cases of discriminatory harassment, the plaintiff is required to demonstrate a work environment "even more egregious than the high standard for hostile work environment." *Id.* at 332 (quoting *Tutman v. WBBM-TV, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000)); *Thorsen v. Cmty. Unit Sch. Dist. 300,* No. 20-cv-50132, 2021 U.S. Dist. LEXIS 85530, at *16 (May 5, 2021) (referring to "can't-take-it-anymore" claims). If a plaintiff successfully demonstrates constructive discharge, she must then also demonstrate discriminatory intent. *Univ. of Chi. Hospitals*, 276 F.3d at 333. Although Amble has produced enough evidence to present a claim for hostile work environment to a jury, the alleged harassment occurring at RFD is not outrageous enough to support a claim for constructive discharge as a matter of law. So, summary judgment is appropriate on this count and the Court need not reach the issue of discriminatory intent.

The Supreme Court has defined the constructive discharge analysis narrowly and succinctly: "[d]id working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004). Historically, the Seventh Circuit has required intolerable conditions to involve "severe and sustained harassment."

17

*Tutman*, 209 F.3d at 1050 (collecting cases). This includes where a boss "peppered a plaintiff with racist comments, brandished a pistol and held it to one plaintiff's head" and another where "repeated instances of grossly offensive conduct and commentary" culminated in a coworker showing the plaintiff a racist pornographic picture, telling her she was hired to perform the task in the photograph, grabbing the plaintiff, and threatening to kill her. *Id.*; *Taylor v. Western & S. Life Ins. Co.*, 966 F.2d 1188, 1191 (7th Cir. 1992); *Brooms v. Regal Tube Co.*, 881 F.2d 412, 417-23 (7th Cir. 1989). In *Suders* itself, it involved the plaintiff's coworkers violently intimidating her and scheming to have her arrested. *Suders*, 542 U.S. at 135-36.

Rarely will an allegation of constructive discharge stand absent physical violence or threats of physical violence. *Stamey v. Forest River, Inc.*, 37 F.4th 1220, 1232 (7th Cir. 2022) (J. Brennan, dissenting). When it does, the conduct is generally truly heinous and outrageous, involving unrelenting harassing events and complaints falling on deaf ears. *Id.* at 1225-26. Even at its low extreme, a finding of constructive discharge has required more than a dozen distinct episodes of harassment involving direct comments regarding the plaintiff's buttocks, breasts, and miscarriage, amounting to a situation where "continued employment would compromise [the] employee's personal safety." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789-90 (7th Cir. 2007).

On the other hand, merely "boorish behavior" by coworkers is insufficient to establish constructive discharge. *Tutman*, 209 F.3d at 1050; *Lindale v. Tokheim Corp.*, 145 F.3d 953, 956 (7th Cir. 1998). And a plaintiff who is placed on paid leave

18

or temporarily reassigned pending an investigation isn't constructively discharged if they choose to instead resign. *Levenstein v. Salafsky*, 414 F.3d 767, 775 (7th Cir. 2005). This all makes sense, because "employees are generally expected to remain employed while seeking redress, thereby allowing an employer to address a situation before it causes the employee to quit." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010).

The work conditions Amble experienced in the five months predating her resignation weren't indicative of a healthy working environment and indeed may have constituted a hostile work environment in violation of Title VII. At least, a reasonable jury could find so. But a reasonable jury couldn't find that the working conditions presented by Amble were "intolerable" as defined by Seventh Circuit and Supreme Court precedent.

The facts presented by the parties—both those in dispute and not—have not demonstrated any threat or act of physical violence upon Amble. Moreover, the harassment she alleges is not the kind of extreme sexual harassment required as a matter of law to "compromise [her] personal safety." *Boumehdi*, 489 F.3d at 790. One instance of finding pornographic magazines in a bathroom and two instances of finding photoshopped currency in addition to the conversation regarding oral sex are insufficient to amount to constructive discharge. Even taking all additional evidence and viewing all incidences of harassment in favor of Amble, there is simply an insufficient record to establish that her working conditions were intolerable as a matter of law. Summary judgment is granted in favor of RFD on Count III.

19

## IV.  Conclusion

For these reasons, the motion for summary judgment is granted in part and denied in part. Counts I and III are dismissed. The parties are directed to contact Magistrate Judge Schneider no later than July 10, 2026, to schedule a settlement conference.


Date: June 26, 2026                                    By:  _____

                                                            Iain D. Johnston
                                                            United States District Judge

20